**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **GABRIEL ALVARADO** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 2:25-cv-00029** |
| | § | |
| | § | **JURY TRIAL** |
| **CITGO PETROLEUM** | § | |
| **CORPORATION A/K/A** | § | |
| **CITGO REFINING AND CHEMICAL** | § | |
| **COMPANY LP,** | § | |
| **A/K/A 'CITGO REFINERY'** | § | |
| **A/K/A 'CITGO'** | § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE DISTRICT JUDGE:

      Comes Now GABRIEL ALVARADO, Plaintiff herein, complaining of Defendant Citgo Petroleum Corporation A/K/A Citgo Refining and Chemical Company, LP, A/K/A 'Citgo Refinery' A/K/A 'Citgo' and files this Plaintiff's Original Complaint.

## I.      PARTIES, JURISDICTION AND VENUE

1. Plaintiff Gabriel Alvarado ("Plaintiff" or "Alvarado") is currently a citizen and resident of Nueces County, Texas and is a former employee and contractor of Defendant. Plaintiff worked for Defendant in Corpus Christi, Nueces County, Texas and reached a prior settlement and agreement of a prior disability and retaliation claim that was filed in this District in Cause No. 2:20-cv-305. All relevant events related to the present suit occurred in Corpus Christi, Nueces County, Texas.

1

2. Defendant Citgo Petroleum Corporation A/K/A Citgo Refining and Chemical Company, LP, A/K/A 'Citgo Refinery' A/K/A 'Citgo' is a business entity which is registered in the State of Texas as a foreign for profit corporation doing business at 1802 Nueces Bay Blvd, Corpus Christi, Nueces County, Texas 78407.  Defendant may be served with service by serving its Texas registered agent as follows: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas,

3. Should Plaintiff learn that the business is owned by a different corporation or other business entity, then the Plaintiff would request leave to add as a proper party, substitute the true name and/or to serve said corporation or business entity.

4. Venue is proper in the Southern District of Texas, and in that, all or a substantial part of the events or omissions giving rise to this cause of action occurred in the Southern District of Texas (Nueces County). Moreover, venue is proper in the Southern District of Texas in that Defendant conducts business in Corpus Christi, Nueces County, Texas.

5.  This Court has jurisdiction pursuant to a federal question, 28 U.S.C. section 1331 and 42 USC Sec. 12101 et seq.  Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. sec.1981, 1981(a), 42 U.S.C. sec.1988.

## II. MISNOMER/MISIDENTIFICATION

6. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## III. RESPONDEAT SUPERIOR
2

7.  Employees involved in this cause of action were, at all times described herein, employees and vice-principals of defendant(s) and were at all times acting in the course and scope of that employment. Accordingly, defendant(s) are liable for such conduct under the doctrine of *Respondeat Superior*.

8.  At all times relevant to this lawsuit, Defendant, its agents and employees, was/were aware of the acts and omissions alleged herein, and through its authorized employees, agents, officers, executives, or representatives, knowingly formulated, participated in, and/or approved the wrongful and illegal conduct complained of herein.

## IV. PROCEDURAL STATEMENT

9.  Plaintiff has satisfied all administrative conditions precedent to filing suit herein, including, but not limited to, filing his administrative complaint/Charge of Discrimination within 180 days of discovering the discriminatory and/or retaliatory act(s). Plaintiff has been issued a Right to Sue by the EEOC on November 1, 2024, and files his petition within 90 days of receipt of same.

## V. FACTS

10. Plaintiff previously filed suit against Defendant and pled alternate causes of action against Defendant for disability discrimination and retaliation in violation of the American with Disabilities Act, 42 USC Sec. 12101 et seq. and the Texas Labor Code Sec. 21 et seq.; and retaliation in violation of the Texas Workers Compensation Act Tex. Lab. Code Sec. 451.001 et seq. He further asserted a claim under section 504 of the Rehab Act related to disability

3

discrimination and retaliation.    That suit was settled by agreement signed on or about October 8, 2021and as part of that agreement entered into a consulting agreement and continued working with Defendant.

11. Plaintiff is a Hispanic male who worked for Defendant at Defendant's refinery located in Corpus Christi, Texas. Defendant's refinery operations refined**,** transported and marketed motor fuels**,** lubricants**,** petrochemicals and other industrial products**.**

12. Defendant is an employer covered by the ADA, 42 USC Sec. 12101 et seq., the Tex.Lab.Code Sec. 21 et seq.  and the Texas Workers Compensation  Act Tex.Lab.Code Sec. 451.001 et seq.

13. The Defendant had more than 15 employees for each calendar year from 2010 to present.

14. Plaintiff is disabled under the ADA, 42 USC Sec. 12102; and the Tex.Lab.Code Sec. 21.002(6)). Plaintiff has:

(a) has a physical impairment that substantially limits one or more of the major life activities;

(b) has a record of such an impairment; or

(c) is regarding as having such an impairment.

15. Defendant regards Plaintiff as having a disability and/or Defendant perceives Plaintiff has disabled.

16. Plaintiff is substantially limited in the major life activities of caring for himself, performing manual tasks, walking, and working; and in the operation of Plaintiff's auto-immune system.

17. Plaintiff began working for Defendant on or about 2007 as a Multi-Job Technician. Plaintiff's job duties were to work out in the refinery and monitor the refinery's operations,

pumps and the temperatures of Defendant's processing units, which included the isolation unit, the Alky unit, and the cumene unit.

18. On or about July 19, 2009, Plaintiff incurred severe injuries as a result of a chemical explosion while working at Defendant's plant in Corpus Christi, Nueces County, Texas, creating Plaintiff's disabilities. The incident was covered by the Texas Worker's Compensation Act.

19. On or about July 19, 2009, one of Defendant's processing units began leaking gas. This created a cloud of hydrofluoric gas. Hydrofluoric acid is a clear, poisonous liquid and is a caustic chemical which is highly corrosive and immediately causes severe damage to tissues on contact. Hydrofluoric acid destroys living tissues, the corrosion will travel to the calcium in human bones, destroy bones and spread through the body from there. The hydrofluoric acid cloud exploded into a mass of intense heat.  This was followed by a larger second explosion. Plaintiff was wearing fire retardant coveralls and an acid splash resistant suit over Plaintiff's coveralls.  The explosions completely disintegrated and burned off Plaintiff's work clothes from the heat and flames. Plaintiff tried to get into a change house but could not scan in because his badge had melted.  A coworker let Plaintiff into the change house where Plaintiff tried to decontaminate himself. Plaintiff was wrapped into a blanket and then waited for an ambulance and emergency medical care.  David Cave, Defendant's Fire Chief in charge of the situation, walked to the outside of the change house where Plaintiff was waiting for medical help. Plaintiff yelled 'where is the ambulance'.  Cave did not respond, turned around and left the change house, without providing assistance. Upon information and belief, Cave's actions delayed and held up the ambulance and emergency medical treatment personnel from

getting to Plaintiff. Plaintiff was forced to wait. Plaintiff was in excruciating pain and in need of immediate emergency care which was exacerbated by delaying / holding up the emergency medical personnel / ambulance into the refinery to provide care to Plaintiff.

20. Later the ambulance arrived, gave Plaintiff medication which knocked Plaintiff out. Plaintiff woke up ninety (90) days later in the hospital.

21. Plaintiff was burned over approximately sixty percent (60%) of his body both externally and internally; and the explosion resulted in the loss of Plaintiff's left forearm and hand; Plaintiff's right harm was severely damaged, his right hand severely damaged, fingers unable to straighten fully, Plaintiff's eye areas, ears, lips had to be remade by grafts; Plaintiff's legs were severely damaged. Plaintiff has incurred over fifty (50) surgeries due to his injuries. Plaintiff has had surgeries for skin grafts, hand functionality, skin and limb movement and skin infections. Plaintiff has required continuous therapy since the explosion and will require therapy for the rest of his life because of the injuries. Plaintiff receives therapies to work with his skin, stretching and treating dry skin conditions, and treating skin infections due to not being able to get proper blood flow through-out Plaintiff's skin; Plaintiff's fingers on his right hand must be regularly stretched to prevent them from permanent curling. Plaintiff's immune system was permanently damaged.

22. Cave was demoted / removed as Fire Chief following the 2009 chemical explosion. Plaintiff laid the fault on Cave and gave testimony resulting in the demotion and/or discipline of Cave.

23. In January of 2011, Plaintiff returned to work. John Silva was Defendant's Human Resource Manager and Kevin Ferrell was Defendant's Plant Manager. Defendant was aware of

6

Plaintiff's need for constant medical treatment and physical therapy. Defendant, through Silva and Ferrell, agreed to:

> (a) accommodate all Plaintiff's future therapy and future medical appointments upon Plaintiff's return to work;
>
> (b) that Plaintiff would not have to use Plaintiff's sick leave or vacation leave to attend therapy; and
>
> (c) that Plaintiff would not be harassed for his therapy or doctor or surgery visits.

24. In returning to work in 2011, Plaintiff became Safety Coordinator / Assistant Fire Chief. Plaintiff's duties included helping conduct safety seminars and presentations with employees, new employees, turn-around employees and contractors; acting as building coordinator for fire evacuations, helping with monthly safety inspections.

25. From 2011 to December of 2018, Plaintiff had performed all his assigned tasks in a good manner and without issue.

26. On or about December 2018, Defendant installed David Cave as Fire Chief and Plaintiff's manager / supervisor. Cave was the Fire Chief during the 2009 plant explosion where Plaintiff was severely injured.

27. As soon as Cave became the Fire Chief in 2018, Cave began a pattern of discrimination, retaliation and harassment against Plaintiff. Cave installed a clear plastic display of a burned set of work overalls in a hall way right outside Plaintiff's office door. Plaintiff's work overalls and underlying Kevlar clothes had been entirely burned off Plaintiff during the 2009 explosion. At the time Cave installed the burned work overall display and to this day, Plaintiff's injuries and burns are clearly visible and Cave installs a burned up pair of work

overalls outside Plaintiff's office door. Plaintiff's office was located near the Training and Conference Room that could sit 70-80 people / employees.  People and employees constantly walked by the burned work overall display every day.   It was viewed by employees and supervisors daily.    Plaintiff had to walk by the burned overalls daily leaving or entering his office. This created extreme emotional distress to Plaintiff through-out each workday. It was open and obvious extreme harassment known to the Defendant and directed at Plaintiff in an extremely hostile, offensive and humiliating manner.

28. Cave began harassing and micromanaging Plaintiff;

29. Cave changed Plaintiff's work schedule and work conditions:  requiring Plaintiff to make up time Plaintiff used for therapy visits on the day of the medical appointments.  This required Plaintiff to get to work early to make up the time. Plaintiff was also required to return to work after therapy and work late to make up for appointment time. The pain endured during and after therapy was excruciating.  Nevertheless, Cave, contrary to practices prior to his change in position to Plaintiff's supervisor, insisted on Plaintiff returning to work and enduring the pain.

30. Plaintiff was required to work weekends to make up for doctor visits times.  Again, this was not the practice and procedure prior to Cave's change in position.

31. Plaintiff was no longer allowed to work the hours Plaintiff needed to work because of his disabilities and medical treatment and therapy.

32. Plaintiff was required to ask for approval for leave to for all medical appointments, which had not been previously required

33. Plaintiff was required to bring a work excuse from all therapy / doctor appointments. Again, this was not previously required

34. Plaintiff's job duty as the liaison for the Fire Station was removed, a perceived dishonor, demotion and retaliation against Plaintiff.

35. Plaintiff was isolated to the main safety office. Plaintiff was no longer allowed to do errands for the Fire Station.

36. Plaintiff requested and Defendant refused to give Plaintiff a written job description/job duties.

37.  Plaintiff requested and Defendant refused to give Plaintiff a written work schedule.

38. Plaintiff was forced to seek medical care for extreme anxiety caused by actions.

39. Defendant failed to engage in the interactive process and violated the American with Disabilities Act (ADA) and Texas Labor Code accommodation requirements.

**Social Security Disability Benefits**

40. At the time of the explosion, Plaintiff was a Multi-Skill Technician. Plaintiff's job duties included monitoring the operations, pumps and temperatures of Defendant's isolation unit, Alky unit, and cumene unit: all required Plaintiff to be outside, in the elements and to climb up and down stairs to check the processing units. Plaintiff's disabilities include severe damage to his skin due to extensive burns and defective immune system. This resulted in Plaintiff not being able to be outside in the sun and weather elements; Plaintiff had lost one arm which prevented Plaintiff from climbing up and down stairs on the tanks and plant structure.

41. Following suffering injuries in July of 2009, Plaintiff applied for and received monthly Social Security disability subsidized payments for him and his family members.

42. This process required Defendant to fill out required Social Security Disability Forms to establish Plaintiff would qualify for these benefit payments. These forms include the Work Activity Questionnaire Form which is necessary for Social Security to qualify Plaintiff for Social Security disability subsidized payments.

43. The Defendant filled out the percentage of job duties on the Social Security Disability Forms that Plaintiff could perform.  The Defendant certified that Plaintiff could only perform ten percent (10%) of his prior job duties. In 2011, Plaintiff qualified for Social Security Disability subsidized payments which subsidized for the other ninety percent (90%) of job duties Plaintiff could not perform. Plaintiff received approximately $2,100 per month in Social Security Disability payments, including payments for family members.

44. However, Defendant later refused to complete the Social Security Disability Forms / Work Activity Questionnaire Form preventing Plaintiff from qualifying for the Social Security disability subsidy.  In fact, Defendant continued and continues to fill out the form even though it was repeatedly requested even after the prior suit and settlement in October 2021.

45. Defendant's continued refusal to complete the Social Security Disability Forms / Work Activity Questionnaire Form resulted in Social Security requiring a cash reimbursement from Plaintiff in the amount of approximately sixty thousand dollars ($60,000) for payments Social Security had previously made to Plaintiff and disqualifying him and his family members from past and future benefits. Although repeatedly requested, Defendant continues to date to fill out the form and Plaintiff has remained disqualified from benefits to date.

10

46. Plaintiff contends that he continues to suffer discrimination and retaliation.

47. In addition, Plaintiff contends that the failure to continue to use him as a consultant and to cancel any employment agreement with him demonstrates continued discrimination and retaliation.

## VI.
## DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, ADA, 42 USC SEC. 12101 ET SEQ. AND CHAPTER 21 ET SEQ. OF THE TEXAS LABOR CODE

48. Plaintiff incorporates the factual allegations set forth above and set forth herein as if set forth verbatim.

49. These acts by the Defendant constitute unlawful intentional discrimination and entitles Plaintiff to recovery of damages.

## VII
## RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, ADA, 42 USC SEC. 12101 ET SEQ. AND CHAPTER 21 ET SEQ. OF THE TEXAS LABOR CODE

50. Plaintiff incorporates the factual allegations set forth above and set forth herein as if set forth verbatim.

51. In the alternative, Plaintiff alleges that because of Plaintiff engaging in protected activity, Defendant subjected Plaintiff to discrimination and retaliation as set out above, including creating an offensive hostile work environment.

11

52. These acts by the Defendant constitute unlawful intentional retaliation and entitles Plaintiff to recovery of damages.

## VIII.

## RETALIATION IN VIOLATION OF TEXAS WORKER'S COMPENSATION ACT, TEX.LAB.CODE SEC. 451.001 ET SEQ.

53. Plaintiff incorporates the factual allegations set forth above and set forth herein as if set forth verbatim.

54. In the alternative, Plaintiff alleges that because of Plaintiff engaging in activity protected under Tex.Lab.Code Sec. 451.001 et seq., Defendant subjected Plaintiff to retaliation / discrimination including creating an offensive hostile work environment.

55. These acts by the Defendant constitute unlawful intentional retaliation / discrimination and entitles Plaintiff to recovery of damages.

## IX.

## SECTION 504 REHAB ACT CLAIM

56. Plaintiff incorporates the factual allegations set forth above and set forth herein as if set forth verbatim.

57. In the alternative, Section 504 of the 1973 Rehabilitation Act provides protection for any person who (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such an impairment or (3) is regarded as having such an impairment. Major life activities include walking, seeing, hearing, speaking, breathing, learning, working, caring for oneself, and performing manual tasks. As a result, the statute clearly applies

12

to the claims of Mr. Alvarado and he is entitled to relief and damages under the Act.

58. It is alternatively contended Defendants were recipients of federal funds and/or contracts and that Defendants violated the Act. During all relevant times, the employer was a "recipient of federal financial assistance," and/or federal contracts and were paid for goods or services they provide to governmental agencies or pursuant to contracts for which they received governmental funds. Defendants failed to accommodate the disabilities of Plaintiff and the conduct was solely on the basis of disability. It is further and alternatively asserted the Defendants' actions were done "intentionally."

## X. JURY DEMAND

59.  Plaintiff requests trial by jury on all claims.

## XI. DAMAGES

60. Plaintiff alleges that as a direct and proximate result of the conduct and/or omissions on the part of the Defendant, he is entitled to recover at least the following legal damages:

   a. Lost wages, past and future

   b. Compensatory Damages, including Mental Anguish, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life suffered in the past, and which, in all reasonable probability, which will be suffered in the future;

   c. Pecuniary losses; liquidated and punitive damages

   d. Reasonable attorney fees, expert fees and costs.

   e. Based upon the above enumerated damages, the Plaintiff pleads for actual damages for the above damage elements in an amount the jury deems reasonable.

## XII. ATTORNEY FEES

61. Defendant's conduct as described in this petition and the resulting damage and loss to

Plaintiff has necessitated Plaintiff retaining counsel. Therefore, Plaintiff seeks all reasonable

and necessary attorney fees in this case which would include at least the following:

a. Preparation and trial of the claim, in an amount the jury deems reasonable;

b. Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

c. An appeal to the Court of Appeals, in an amount the jury deems reasonable;

d. Making or responding to an Application for Writ of Error to the Supreme Court, and attorneys' fees in the event that application for Writ of Error is granted, in an amount the jury deems reasonable; and

e. Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that on final trial, Plaintiff have judgment against Defendant

as follows:

1.     Judgment against Defendant for Plaintiff's actual damages, including lost wages,

bonuses, salary and benefits (both back pay and front pay), in an amount to be determined;

2.     Judgment against Defendant for compensatory damages for the maximum amount

allowed by law;

3.     An order that Defendant take such other and further actions as may be necessary to

redress Defendant's violation of the Civil Rights and any other applicable claims including

reinstatement, if warranted or feasible;

4.     Pre-judgment and post-judgment interest at the maximum amount allowed by law;

5.     Costs of suit, including expert's fees and attorney's fees;

6.      The award of such other and further relief, both at law and in equity, including injunctive relief and reinstatement, to which Plaintiff may be justly entitled.

15

Respectfully Submitted,

*/s/ Adam Poncio*
**Adam Poncio**
**State Bar No. 16109800**
**S.D. ID No. 194847**
**salaw@msn.com**
**Alan Braun**
**State Bar No. 24054488**
**S.D. ID No. 1428056**
**abraun@ponciolaw.com**

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Rd., Suite 310**
**San Antonio, Texas  78229**
**Telephone: (210) 212-7979**
**Facsimile:   (210) 212-5880**

**ATTORNEYS FOR PLAINTIFF**